## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TIMOTHY J. SHENK, SR.

Plaintiff,

-v.-

5:19-CV-1287
(DNH/ATB)

STATE UNIVERSITY OF NEW YORK
at CORTLAND,

Defendant.

TIMOTHY J. SHENK, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), and a motion for appointment of counsel filed by plaintiff Timothy J. Shenk, Sr. (Dkt. Nos. 1-3). In this civil rights action, plaintiff claims that defendant State University of New York at Cortland ("SUNY Cortland") deprived plaintiff of his "right to work" by improperly denying him his degree after he completed all the academic requirements. (Complaint ("Compl.") at 3-6) (Dkt. No. 1). Plaintiff seeks substantial monetary relief. (Compl. at 8).

## I.    **IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). This court agrees and finds that plaintiff is financially eligible to proceed IFP.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court considers the plaintiff's complaints under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

## II.  **Complaint**

Plaintiff alleges that the facts establishing the background of this action began

occurring in 2001. Plaintiff was enrolled in a "Masters in Arts to Teach English" ("MAT") program at SUNY Cortland. (Compl. ¶ III(C)(1)). Plaintiff states that, in preparation for his final semester, he took out "the usual" Stafford-Pell loans in August of 2001. (Compl. ¶ III(C)(2)). Plaintiff states that the loan covered his tuition and helped with living expenses for that semester.[1]

Plaintiff states that when the terrorist attacks on 9/11 occurred, plaintiff withdrew from his student teaching responsibilities because his National Guard Unit was called to assist in the recovery efforts. (Compl. ¶ III(C)(3)). Plaintiff states that he served with his unit at the World Trade Center site for sixteen days, after which, he was returned to Cortland and released from duty. (Compl. ¶ III(C)(4)).

Plaintiff alleges that his sixteen-day National Guard duty caused him to miss more than one half month of student teaching. Because he was also mentally and emotionally affected by the experience, he formally withdrew from the fall semester, with the permission of SUNY Cortland. (Compl. ¶ III(C)(5)). SUNY Cortland advised plaintiff to re-register the following semester, in the Spring of 2002, to redo his student teaching requirements. (*Id.*) Plaintiff did as the school suggested.

Plaintiff completed his student teaching semester in the Spring of 2002. (Compl. ¶ III(C)(6)). Plaintiff states that he completed the program in accordance with the university's standards. However, in May of 2002, plaintiff learned that SUNY Cortland had placed an "academic block" on his student account. (Compl. ¶¶ III(C)(6)-(7)). Plaintiff states that this block prevented him from obtaining transcripts, showing that he

---

[1] Plaintiff states that, when he took out this loan, he understood that he would have the "customary" grace period after graduating within which to begin making payments. (Compl. ¶ III(C)(2))

had successfully completed the MAT program and prevented him from obtaining his New York State teaching certification.  Plaintiff states that this certificate is essential to getting a job as a teacher in a New York State public school. (Compl. ¶ III(C)(7)).

Plaintiff alleges that this conduct by SUNY Cortland was "a grievous breach of contract" between plaintiff and the university. (Compl. ¶ III(C)(6)).  Plaintiff also alleges that this conduct constitutes a violation of plaintiff's "right to work and make a living at [his] chosen profession." (*Id.*)  Plaintiff claims that in May of 2002, SUNY Cortland informed him that, because he had been absent from classes in the previous semester, a portion of his student loan for that semester was in default.  SUNY Cortland forgave the SUNY Cortland portion of the loan for that semester, and the University repaid the federal portion of the loan amout, totaling $3450.00. (Compl. ¶ III(C)(8) & Ex. D).[2]

Because SUNY Cortland repaid the federal portion of plaintiff's loan, plaintiff remained in debt with SUNY Cortland. (Compl. ¶ III(C)(9)).  SUNY Cortland's policy was to "place a freeze or block on student accounts who are in debt to them." (*Id.*)  Because of this "blocked" account, plaintiff was prevented from graduating and getting his New York State certification, which prevented him from becoming a teacher. (*Id.* & Ex. O, ¶ 4).  Plaintiff believes that he was also entitled to the customary "grace period" after graduation within which to start paying on his loan. (Compl. ¶ III(C)(10))

Plaintiff states that, as a student, he fully complied with all the requirements, and in fact, completed the MAT program academically. (Compl. ¶ III(C)(11)).  In addition, he committed no acts of misconduct, "no delinquencies, and no failures of any sort to

---

[2] Plaintiff has attached a substantial number of exhibits to his complaint. (Pl.'s Exs. A-Z-2) (Dkt. Nos. 1-2-1-33).

4

warrant what [he considers] a punitive over-reach of authority that ultimately wasted all that [he] had worked for and stopped [him] from exercising [his] right to work at and make a living off the vocation [he chose]." (Compl. ¶ III(C)(12)).  Plaintiff states that defendant maintains the block on his account "to this . . . day." (Compl. ¶ III(C)(14)). Plaintiff states that, because of defendant's conduct, he has never been able to obtain a teaching position. (Compl. ¶ III (C)(15)).

## III.    Eleventh Amendment

States generally enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law. *KM Enterprises, Inc. v. McDonald*, 518 F. App'x 12 (2d Cir. 2013) (citing U.S. Const. amend. XI; *Alden v. Maine*, 527 U.S. 706, 727–28 (1999)).  For Eleventh Amendment purposes, SUNY is "'an integral part of the government of the State [of New York] and when it is sued the State is the real party.'"*Yin v. Bd. of Trustees of the State University of NY*, No. 03-CV-959, 2004 WL 2202594, at *11 (W.D.N.Y. Sept. 29, 2004), *aff'd* 150 F. App'x 21 (2d Cir. 2005). Thus, New York's sovereign immunity extends to the State University of New York system. *Greenberg v. State University Hospital Downstate Medical Center*, No. 15-CV-2343, 2019 WL 4752018, at *10 (E.D.N.Y. Sept. 29, 2019) (citing *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)). *See also Wilkinson v. New York State*, No. 2:18-CV-4148, at *7 (E.D.N.Y. Oct. 22, 2019) (same).

In *Dube*, the Second Circuit specifically stated that section 1983 does not constitute an exercise of Congress's authority to abrogate sovereign immunity. 900 F.2d at 594.  There is a narrow exception to this rule when a complaint against a state officer alleges a "continuing violation of federal law, which requires ***prospective*** injunctive relief. *KM Enterprises, Inc, supra* (quoting *Green v. Mansour*, 474 U.S. 64,

5

68 (emphasis in original) (internal quotation marks omitted)).

### B.    Application

In this case, plaintiff sues SUNY Cortland under section 1983 for a substantial amount of money.  Any such claims are barred by the Eleventh Amendment.  Plaintiff has not asserted any claims for prospective injunctive relief, and thus, plaintiff's complaint may be dismissed based on the Eleventh Amendment.  In addition, as discussed below, any claims that plaintiff could have had are barred by the applicable statute of limitations.

## IV.    <u>Statute of Limitations</u>

### A.    Legal Standards

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). See N.Y. Civ. Prac. L & R. § 214(5).  Section 1983 actions generally accrue when "a plaintiff knows or has reason to know of the injury that is the basis of the claim." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Even if the statute of limitations has run, "equitable tolling" may be available. Equitable tolling is applied in "rare and exceptional cases" where "extraordinary circumstances" prevented the plaintiff from filing his claims within the statute of limitations. *See Abbas v. Dixon*, 480 F.3d 560, 564 (2d Cir. 2007).  Plaintiff bears the burden of establishing the applicability of equitable tolling. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

The court is well-aware that the statute of limitations is an affirmative defense, the resolution of which generally awaits a motion by the defendant. *Murray v. New*

6

*York City*, No. 19-CV-1959, 2019 WL 4053951, at *3 (S.D.N.Y. Aug. 28, 2019) (because the statute of limitations is an affirmative defense, plaintiff is generally not required to plead that the case is timely filed); *Tavarez v. 32BJ*, No. 18-CV-8517, 2019 WL 5683370, at *4 (S.D.N.Y. Nov. 1, 2019). However, "[d]ismissal may be appropriate . . . where the existence of an affirmative defense, such as the statute of limitations is plain from the face of the pleading." *Tavarez*, 2019 WL 5683370, at *4 (citing *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming sua sponte dismissal under 28 U.S.C. § 1915(d) on statute of limitations grounds); *Baker v. Cuomo*, 58 F.3d 814, 818-19 (2d Cir. 1995) (sua sponte dismissal is "appropriate if it appears from the face of the complaint that the action is barred . . . by the statute of limitations"), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996)). *See also Murray, supra*. (district courts may dismiss an action sua sponte on limitations grounds where the fact supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted).

### 2. Application

Plaintiff states that the defendant denied him his degree in May of *2002*. He appears to concede that the statute of limitations for section 1983 actions has expired because he states that he is "requesting a tolling of any Statute of Limitations . . . " for various reasons. (Compl. ¶ III(B)(3)(A)). These reasons include a "lack of legal capacity to act upon this matter." First, plaintiff states that, through the years, he could not find any attorney who would assist, or even advise him, regarding this matter. (*Id.*) In addition, he could not afford to pay legal counsel if he could find one. Plaintiff states that he had no idea where to bring the matter for resolution, but that "[f]inally that changed in 2018 when it became clear that the bankruptcy court in Syracuse could

7

not preside over this complaint. (*Id.* & Ex. A).  Plaintiff claims that "this knowledge" led him to file this action in Federal Court.  Plaintiff filed this action on October 17, 2019. (Dkt. No. 1).

Plaintiff also states that he believes that the matter "represents a continuing breach of contract between myself and SUNY Cortland who [sic] is yet to this day - withholding my teaching degree." (Compl. ¶ III(B)(3)(B)).  Plaintiff states that Exhibits A-U, which he has attached to his complaint are submitted as a "***partial*** set of items demonstrating [his] exhaustive efforts through the years trying to resolve this matter." (Compl. ¶ III(B)(3)(C)).

Even assuming that plaintiff stated a cause of action, a fact that this court does ***not*** find, plaintiff clearly knew in 2002 that defendant had placed a hold on his degree based upon his failure to pay his loans.  Plaintiff knew that this "hold" would prevent him from graduating and from obtaining the required teaching certificate.  Whatever claim he had against SUNY Cortland would have accrued at that time.  Plaintiff's lack of knowledge and inability to find or pay for an attorney are insufficient reasons for equitable tolling.  If those reasons were sufficient to successfully assert equitable tolling, every pro se litigant who could not find counsel, and was not an attorney him or herself, would be entitled to equitable tolling.  The fact that the bankruptcy court in 2018-19 would not discharge plaintiff's debt and would not decide the claims that he brings in this action[3] would not justify equitable tolling.  Even if plaintiff had filed this action in 2017 or 2018, the statute of limitations would have long-since expired.

---

[3] In addition to requesting that his student loan be discharged in his bankruptcy action, plaintiff also requested that "(ii) SUNY Cortland award his degree if such discharge is granted . . . ." *In re Shenk*, 603 BR 671, 674 (N.D.N.Y. 2019).  Plaintiff consented to the dismissal of this and one other claim prior to Judge Cangilos-Ruiz's decision. *Id.*

A litigant who seeks equitable tolling bears the burden of showing that "'(1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Engles v. Jones*, No. 6:13-CV-6461, __ F. Supp. 3d __, 2019 WL 4418827, at *5 (W.D.N.Y. Sept. 13, 2019) (quoting *Victorial v. Burge*, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007) (quotation omitted) and citing *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) ("The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff.")).  Courts have found that a defendant's misrepresentations or the concealment of critical facts relating to a plaintiff's claim may be sufficient for equitable tolling.

Neither of those conditions exist in this case.  Plaintiff has been aware of the reason for the denial of his degree for quite some time.  Plaintiff's Exhibit F-1 is a letter that plaintiff wrote to a New York State Court of Claims Judge on August 10, 2015, more than four years prior to filing this action. (Pl.'s Ex. F) (Dkt. 1-8).  In plaintiff's letter, it is clear that he was well-aware of what he claims to be his cause of action regarding SUNY's alleged improper conduct.  Exhibit G-1 is a copy of the cover of a 140-page book that plaintiff states he wrote about his "civil complaint in this case." (Pl.'s Ex. G-1) (Dkt. No. 1-10).  Plaintiff has also attached a letter which outlined his "story" that he wrote when he was seeking counsel to represent him in 2014. (Pl.'s Ex. H).  Plaintiff attaches another letter that he wrote to Senator Charles Schumer on August 5, 2012, relating his situation and asking for help. (Pl.'s Ex. K) (Dkt. No. 1-14).

The fact that plaintiff alleges he could not obtain counsel or that he was unsure in which court to bring the action is not sufficient to establish that the three-year statute of limitations should be tolled from 2002 or 2003 when he became aware of his injury until 2019 when he finally filed suit in Federal District Court.  There was no "outside"

9

or extraordinary circumstance standing in plaintiff's way.

Plaintiff states that defendant maintains the block on his account to the present day. To the extent that plaintiff claims that the running of statute of limitations may be avoided because the defendants' conduct constitutes a "continuing violation," this argument cannot succeed. Courts have recognized the concept of a continuing violation. *See e.g. Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *Shannon v. Recording Industry Ass'n of America*, 661 F. Supp. 205, 210 (S.D. Ohio) (citation omitted). Under the continuing violation doctrine, if a plaintiff has endured a "continuous practice and policy of discrimination," the statute of limitations may not begin to run until the last discriminatory act in furtherance of the policy. *Chandrapaul v. City University of New York*, No. 14 Civ. 790, 2016 WL 1611468, at *13 (E.D.N.Y. Apr. 20, 2016) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). However, the courts have not looked favorably on the application of this doctrine, and have applied it only under "compelling" circumstances. *Id.* (quoting *Libbey v. Vill. of Atl. Beach*, 972 F. Supp. 2d 185, 212 (E.D.N.Y. 2013) (internal quotation marks omitted).

The continuing violation doctrine, is not implicated simply by multiple individual acts that are not the result of a policy. *Troeger v. Ellenville Cent. Sch. Dist.*, No. 1:10-CV-718, 2012 WL 1605532, at *3 (N.D.N.Y. May 8, 2012) (citation omitted). The court must distinguish between a "continuing violation" and a violation with "continuing consequences." *Melendez v. Schneiderman*, No. 9:13-CV-622, 2014 WL 2154536, at *12 (N.D.N.Y. May 22, 2014) (citing *Ruane v. County of Suffolk*, 923 F. Supp. 2d 454, 460 (E.D.N.Y. 2013) (distinguishing a due process case in which the constitutional injury included the failure to afford a hearing, with a case in which the

10

claim was based on an unconstitutional hearing with continuing consequences)).  A single violation with continuing consequences does not extend the accrual of the statute of limitations past the original act. *Id.* (citing *Doe v. Blake*, 809 F. Supp. 1020, 1025 (D. Conn. 1992); *Shannon v. Recording Indust. Ass'n of Amer.*, 661 F. Supp. 205, 210 (S.D. Ohio 1987)).

Plaintiff is alleging a contract violation.  While he alleges the denial of his right to work and blames the loss of every subsequent teaching position on the failure of defendant to release his degree, the "breach of contract"[4] occurred when the University first denied plaintiff his degree based on the defaulted loan.  Whatever happened after this alleged breach of contract was, at worst, a "continuing consequence," not a "continuing violation."

Generally, a court should not dismiss a complaint as time-barred without providing the pro se plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint may be considered timely. *Abbas v. Dixon*, 480 F.3d 636, 640-41 (2d Cir. 2007).  In this case, plaintiff has already expressed his reasons for tolling the statute of limitations, and they cannot succeed.

## V.    **Opportunity to Amend**

### A.    **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer*

---

[4] The relationship between a university and its students is based on an "implied contract." *Rosenthal v. New York Univ.*, No. 08 Civ. 5338, 2010 WL 3564975, at *3 (S.D.N.Y. Sept. 13, 2010)

& *Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    Application

This court is well-aware of  the liberality with which pro se complaints are treated. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).  However, plaintiff will not be able to sue SUNY Cortland for money damages on any basis.  The statute of limitations would also prevent plaintiff from suing SUNY Cortland based upon its failure to confer his degree.  To the extent that plaintiff could have sued individual defendants from SUNY Cortland under 42 U.S.C. § 1983 in their individual capacities, claims that would not be barred by the Eleventh Amendment, the statute of limitations would bar such claims.  Thus, this court will recommend that plaintiff be denied the opportunity to amend.

## VII.  Motion for Appointment of Counsel

### A.    Legal Standards

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).  Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel."  28 U.S.C. § 1915(e)(1).  Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

Courts cannot utilize a bright-line test in determining whether counsel should be

appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion.  As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance.  If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

**B.    Application**

Plaintiff has filed a motion for appointment of counsel, indicating that he has contacted various attorneys and entities for representation, without success. (Dkt. No. 3).  Plaintiff states that he should be appointed counsel because he is indigent.  However, plaintiff's financial status is only one factor in the counsel analysis.  As stated above, the court must first determine whether the case has substance. *Terminate Control Corp.*, *supra*.  Based on the analysis above, this court finds that the plaintiff's

13

complaint does not have substance and cannot meet the first requirement in the

appointment of counsel analysis.  Thus, plaintiff's motion for appointment of counsel is

denied.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is

**GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED IN ITS**

**ENTIRETY WITH PREJUDICE**, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is

**DENIED**, and it is

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 13, 2019

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**